## POPE *v.* IVY ET AL.

[78 South. 367, Division B.]

1. BOUNDARIES. *Proof. Surveys. Presumption.*

Under Code 1906, chapter 141. (Hemingway's Code, chapter 176), making the county surveyor a public officer and defining his duties, and section 1963, Code 1906 (Hemingway's Code, section 1623), making the record of a survey by the county surveyor *prima-facie* evidence of the correctness of such survey; where the county surveyor makes a survey in accordance with the statute, such survey will prevail over a survey made by a private surveyor, where the county surveyor is not shown to be incompetent and the private survey is not shown to be correct, or to have been properly made.

2. BOUNDARIES. *Evidence. Admissibility.*

In a boundary despute it was error to admit a map and partition proceedings made in the division of an estate, to contradict the testimony of a surveyor, where the evidence showed that in making such map no survey was made and the location of the land involved was not determined.

3. EVIDENCE. *Admissibility. Boundaries.*

In a suit involving the boundaries of land, a lease from plaintiff to defendant was admissible in evidence, since while the lease would not estop the defendant from defending in ejectment after the expiration of the lease, still it was admissible as an admission of the title in the plaintiff at the time of the lease and should have gone to the jury, as any other admission against interest by a party to the suit for whatever it was worth.

4. BOUNDARIES. *Instructions.*

In a boundary dispute, where surveys by various surveyors were admitted in evidence, it was error to give an instruction which assumed that the corner of one survey was the correct corner.

APPEAL from the circuit court of Clay county.

HON. T. B. CARROLL, Judge.

Suit by Mrs. Allie Pope against Gates T. Ivy and others. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Frierson & Hale*, for appellant.

*Gates T. Ivy*, for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This is a suit between Mrs. Pope and the defendants, involving the ownership of Harmon Lake, and the question turns upon whether Harmon Lake is situated upon the Northwest quarter and the West half of the East half of the Southwest quarter, or whether it is situated upon the East half of the East half of the Southwest quarter, Section 25, Township 17, Range 5 East Clay county, Miss.

In 1909 Mrs. Pope leased the lake to certain parties of Starkville, and the defendants in this case, who are citizens of West Point, Miss. The lease was for a period of five years, and there were to be certain improvements erected upon the banks of the lake which were to belong to Mrs. Pope at the termination of the lease. The lease terminated January 1, 1914, and an ejectment suit was brought in 1916 against the defendants for the possession of the lands. The defendants defended upon the theory that a portion of Harmon Lake was on the north end of the East half of the East half of the Southwest quarter, and that they had acquired a one-half interest in said lands and had erected the improvements thereon, and not upon the lands of Mrs. Pope.

The plaintiff introduced a survey made by one Morrow, who was at the time of the survey county surveyor of Clay county, and who was assisted by J. H. Welbourn, which survey was duly recorded in the office of the chancery clerk of Clay county. According to this survey the lake in question lies wholly upon the land of Mrs. Pope. This survey was also supported by the testimony of J. H. Welbourn, a witness for the plaintiff, who testified that he assisted in making it, and that it was correct with the single exception that the corner

located south of the lake, between the East half of
the East half of the Southwest quarter, and West half
of the East half of the Southwest quarter, was stated
to be one hundred and fifty yards south of the lake,
whereas, in truth, Welbourn says it was one hundred
and fifty feet. Welbourn testified to making other sur-
veys, testing the accuracy of this survey subsequent to
the making of the Morrow survey referred to, and that
they found the old traces and marks on the line that
they ran. On cross-examination Welbourn was asked
with reference to a partition of the estate of W. B.
Montgomery, father of the appellant, and a map of the
lake and the lands allotted to Mrs. Pope in such parti-
tion, filed in the chancery court of Oktibbeha county,
Miss. Welbourn testified that this map in that suit was
not made by a survey, and that no survey was then
made, and that the location of the lake was of no im-
portance or consideration in making that map, for the
reason that the lake would be upon Mrs. Pope's land,
so far as the heirs of Montgomery were·concerned; that
he made the map from a drawing and data furnished
by the attorneys in the case, and that such map was not
correct, and that no survey was actually made. The
defendants introduced this map in evidence to contra-
dict the Morrow-Welbourn survey, over objection and
exception of the plaintiff.

.The defendants (appellees) introduced witnesses to
show two other surveys, one made by R.· D. Cooper, and
another by Gordon Green, Gordon Green being the sur-
veyor of Monroe county; the latter survey being made
on behalf of the defendants. Neither of these surveys
were recorded in the chancery clerk's office, and we do
not think the proof ·sufficiently establishes the correct-
ness of these surveys. Neither of the surveyors was
introduced to testify as to the correctness of the surveys,
or that the instruments used were correct and had been
tested, nor does it appear that either of them were made

by agreement between the parties to settle boundaries, but seem to have been ex parte surveys. A certificate of the surveyor in neither of these cases was introduced in evidence, but the evidence consists entirely of the testimony of witnesses who were present.

The plaintiff offered in evidence the lease made between Mrs. Pope and the defendants in 1909, but this lease was excluded by the court, over the objection and exception of the plaintiff.

The second instruction for the defendants is as follows:

"The court instructs the jury that if they believe that part of Harmon Lake lying east of the Cooper line, as testified to by certain of the witnesses, on lands owned by the defendants, or in which they have an undivided interest, and that the lands in controversy are lands belonging to defendants, then the jury will find for the defendants, and, unless the evidence satisfies the minds of the jury preponderately that the claim of the plaintiff is sustained by creditable evidence, they will find for the defendants."

The question was submitted to the jury, and the jury found for the defendants. The plaintiff made a motion for a new trial, in which she claimed as newly discovered evidence a survey made by the then surveyor of Clay county for the defendants, which showed the lake to be upon the lands of Mrs. Pope, and also that all of the clubhouse of the defendants, except one corner, was upon the land of Mrs. Pope. It appears that the plaintiff's attorney had heard of this survey, and had the surveyor summoned as a witness, but failed to consult with him sufficiently, and failed to introduce him as a witness upon the trial before the jury. It also appears in the defendants' evidence that W. C. Welbourn made some survey of the land, and it was claimed that his boundaries were favorable to the defendants. Plaintiff claims she knew nothing of such survey until

the evidence was brought out on the trial, and that Welbourn then lived in Texas; that plaintiff sent a telegram to Welbourn to know as to the truthfulness of this claim, and Welbourn replied by telegraph that he had no recollection of any such survey.

Our legislature has enacted the chapter on surveys and surveying (chapter 141, Code of 1906; chapter 176, Hemingway's Code). Under this chapter the county surveyor is a public officer, required to take oath and give bond for the faithful performance of his duties, and it is his duty faithfully to execute all orders of survey directed to him by any court; to make all surveys of land in his county at the request of the owners or proprietors thereof; to resurvey lands for owners; and that, when called on for that purpose by those interested, he shall resurvey and re-mark and bound any tract of land in his county, where the old marks are defaced or likely to decay or perish, being governed by the original surveys; and that he shall make a certificate of such re-markings and boundaries, and deliver it to the owner of the land, who may have it recorded in the chancery clerk's office of the county or counties in which the land is situated. It is also provided that he shall re-establish original marks, shall swear chain-bearers, and record surveys in a suitable book to be kept for that purpose. It is also provided that, if the county surveyor is interested or unable to act, a survey may be made by the surveyor of any other convenient county, and that a court may order a survey made by a person of skill, as the parties interested may agree upon. Section 1963 of the Code of 1906 (Hemingway's Code, section 1623) makes such record of a survey prima facie evidence of the correctness of the survey, this section reading as follows:

"Surveyor's certificate *prima facie.*—The certificate of a county surveyor or his deputy of any survey made by him of any lands in his county, or of any lands sur-

veyed by him under order of the court, shall be presumptive evidence of the facts connected with and pertinent to the survey therein contained, unless such surveyor or his deputy shall be interested therein."

It will be seen from the foregoing that the Morrow survey was the only survey made in conformity to the statute, and the only one which could be accepted as being correct, in the absence of proof by the surveyor or other parties making the survey of the correctness of the survey. There is nothing in the record to show that the surveyor of Clay county was not competent to make the survey at the time the Gordon Green survey was made; and there was no record of the Gordon Green survey in the chancery clerk's office, nor was the certificate or the survey itself offered in evidence, nor was Green or any other person produced to show that the survey was correct, that the instruments were properly adjusted, and that proper governmental corners were used as starting points. There is some proof that the Cooper survey started from a recognized corner, but the correctness and accuracy of the survey is not sufficiently shown; and as the survey was not recorded, and as it was not made between the parties litigant in this suit for the purposes of settling boundaries between them, it was insufficient to overturn the presumption of correctness of the survey made by the county surveyor, Morrow.

We think it was error for the court to permit the defendants to introduce the map and partition proceedings made in the division of the Montgomery estate in evidence for the purpose of contradicting Welbourn's testimony, for the reason that it clearly appears from Welbourn's testimony that no survey was made, and that there was no effort to correctly locate the lake in question, and that the location of the lake was not considered of importance in that suit. The introduction of this evidence could only confuse and mislead the jury.

We also think it was error for the court to exclude the lease offered by the plaintiff. While the lease would not estop the defendants from defending in ejectment after the expiration of the lease, under the authority of *Wilson* v. *Peacock,* 111 Miss. 116, 71 So. 296, still it was admissible as an admission of the title in the appellant at the time of the making of the lease, and should have gone to the jury, as any other admission against interest by a party to the suit, for whatever it was worth.

We think it was error, also, to give the second instruction for the defendants, as this instruction seems to assume that the corner of the Cooper survey was the correct corner.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*